**SO ORDERED.**

**SIGNED this 7th day of July, 2017.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>ROBERT PHILLIP GARCIA<br>ELIZABETH PAULINE GARCIA,<br><br>    Debtors. | Case No. 13-10458<br>Chapter 13 |
| CARL B. DAVIS, Chapter 13 Trustee<br><br>    Plaintiff,<br><br>vs.<br><br>TYSON PREPARED FOODS, INC.<br><br>    Defendant. | Adv. No. 17-5006 |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

1

When Kansas workers are injured on the job, the Kansas Workers Compensation law requires their employers to cover their medical expenses and lost wages. If a third party caused the worker's injury, the worker can sue and the employer is subrogated to whatever recovery "by judgment, settlement, or otherwise" the worker receives and a lien attaches to that recovery by operation of law.[1] Whether the creation of that lien violates the automatic stay of "any act" to create, perfect or enforce any lien against property of the estate that a worker's bankruptcy triggers is the issue in this case.[2]

Before she filed this bankruptcy case, Elizabeth Garcia slipped on a wet floor mat and fell while working for Tyson Prepared Foods, Inc. ("Tyson"). Aramark Services had placed the mat at her workplace. After settling her workers compensation claim against Tyson, and after filing bankruptcy, Garcia sued Aramark for her injuries, settling her personal injury claim for $45,000. Now Tyson claims a right of subrogation and a lien against the settlement proceeds to recoup the $22,061.25 in workers compensation benefits it paid her post-petition. The chapter 13 trustee contends that Tyson's lien never attached, or if it did, that it is void as having being created in violation of the automatic stay. Because Tyson's subrogation lien arose by operation of law when Garcia settled with Aramark, and not because of

---

[1] KAN. STAT. ANN. § 44-504(b) (2000).
[2] 11 U.S.C. § 362(a)(4).

2

any affirmative act by Tyson, neither the right of subrogation nor the lien violated the automatic stay and Tyson's statutory lien on the Aramark recovery is not void.[3]

Summary Judgment Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim.[4] Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. Substantive law identifies which facts are critical and which facts are irrelevant.[5] Even where the material facts are uncontroverted, those facts must demonstrate that the movant is entitled to judgment under the applicable law.[6] Because this proceeding requires the Court to interpret and apply the Bankruptcy Code's automatic stay provision and the Kansas workers compensation lien statute to the uncontroverted facts, it is particularly suited for disposition by summary judgment.[7]

---

[3] The Chapter 13 Trustee Carl Davis appears by his attorney Karin N. Amyx. Tyson Prepared Foods, Inc. appears by its attorney Michael D. Fielding.
[4] Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 makes Rule 56 applicable in adversary proceedings. *See Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[6] *See Clifton v. Craig*, 924 F.2d 182, 183-84 (10th Cir.1991) (if material facts are not in dispute, "we must next determine if the substantive law was correctly applied."); *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).
[7] *Thomas v. Metropolitan Life Ins. Co.,* 631 F.3d at 1160 (Statutory interpretation is a matter of law appropriate for resolution on summary judgment).

3

Facts

Elizabeth Garcia was working at Tyson Prepared Foods, Inc.[8] on June 25, 2012, when she slipped and fell on a wet floor mat that Aramark had supplied at her work place. When she reported her injury, Tyson began paying Garcia's medical expenses and other workers' compensation benefits as required by Kansas law. After Garcia completed medical treatment for her injury (and after she filed this bankruptcy case), she and Tyson settled her workers compensation claim on June 23, 2014 for a final lump sum payment of $20,000, $13,590.10 of which represented compensation for her permanent partial disability.

Before that, and apparently unbeknownst to Tyson or the workers compensation system, Garcia and her husband filed this chapter 13 bankruptcy on March 11, 2013. She didn't disclose her pending workers compensation claim or her potential personal injury claim against Aramark in the schedules, but she did note in the Statement of Current Monthly Income that she was receiving $1,423 monthly for "Workers Comp."[9] But Garcia also represented in her Statement of Financial Affairs that her "Workers Comp." benefits ended in February 2013.[10] In fact, Tyson paid

---

[8] Tyson Prepared Foods, Inc. is a subsidiary of Tyson Foods, Inc., which is self-insured and pays the worker's compensation claims filed by its employees and those of its subsidiaries. For ease of reference, the court will use Tyson to describe either entity, depending upon the context.
[9] Doc. 1, pp. 65.
[10] *See* Doc. 1, p. 32, No. 2. This representation was inaccurate. Tyson paid Garcia over $22,000 in workers compensation benefits during the pendency of her bankruptcy case, in addition to the $20,000 final settlement of her workers compensation claim.

4

Garcia workers compensation benefits of $27,641.31 before her bankruptcy and another $22,061.25 after she filed. The Garcias' second amended chapter 13 plan was confirmed on September 4, 2013 and provided for them to make monthly plan payments of $874.00 over sixty months. Tyson didn't learn of Garcia's bankruptcy until 2016.[11]

On June 25, 2014, two days after Garcia settled her workers compensation claim with Tyson, she sued Aramark in state court and Aramark removed the case to the United States District Court for the District of Kansas.[12] The chapter 13 trustee learned of the Aramark lawsuit in late August of 2015 and on November 5, 2015 filed a motion for turnover of any lawsuit recovery "by way of settlement, judgment or otherwise" as property of the estate.[13] Debtors amended Schedule B on November 9, 2015 to disclose that Garcia "*may* have a slip and fall case against Aramark; however she had received workers comp benefits for the injury and the workers comp carrier [sic] has claimed a lien against any personal injury case relating to the same issue."[14] On February 10, 2016, the Court granted the turnover motion without objection and

---

[11] The affidavit of Lisa Lein, Tyson's workers compensation Claims Supervisor, states that Tyson was unaware of Garcia's bankruptcy until 2016, when she learned of it from Aramark. Adv. Doc. 6-1, p. 3 at ¶ 13. The trustee does not controvert this fact. *See* Tyson Fact ¶ 18, Adv. Doc. 6, p. 6 and Trustee's Response, Adv. Doc. 9, p. 4, ¶ 18.

[12] There is nothing in the summary judgment record to show that Garcia gave Tyson notice of the Aramark lawsuit to permit it to intervene and participate in the action as contemplated by § 44-504(b).

[13] Doc. 44.

[14] Doc. 46. Emphasis added.

5

directed the debtors to apply for bankruptcy court approval of the employment of Melinda G. Young, their special counsel, to represent Ms. Garcia in the Aramark lawsuit. Ms. Young's employment was approved and, in 2016, she settled the Aramark lawsuit for $45,000.

On November 29, 2016, the debtors filed a motion for approval of the compromise under Fed. R. Bankr. P. 9019 and to allow Garcia's attorney's fees and expenses in the Aramark suit. Tyson objected, asserting its subrogation and lien for $22,061.25 of post-petition workers compensation benefits it had paid to or on Garcia's behalf.[15] The Court approved the settlement and the payment of attorney's fees and expenses, but also ordered that Ms. Young hold the remaining $25,359.37 of the Aramark settlement proceeds in her trust account pending further litigation concerning the validity of Tyson's lien. The trustee commenced this adversary proceeding to determine the validity of Tyson's subrogation lien. In his complaint, the trustee asserted only that the lien had either never attached because the settlement had yet to be approved or, if the lien had attached, that it is void because Tyson created it post-petition in violation of the automatic stay.[16] Both the trustee and Tyson move for summary judgment on the complaint.

---

[15] Doc. 65, 68.
[16] The Trustee's complaint stated no affirmative claim for avoidance relief under Chapter 5 of the Bankruptcy Code. As no pretrial order has been filed in this case, the issues and claim posed in the complaint are the only ones before this Court.

6

Analysis

The facts necessary to resolve the validity of Tyson's claimed workers compensation lien are uncontroverted, save one. Tyson complains that it received no notice from either the trustee or debtor of the Garcia bankruptcy. That is immaterial to the issue here which is whether Tyson's statutory subrogation rights and its lien are valid.[17] Did Tyson violate the automatic stay when its lien attached post-petition? No.

The filing of a bankruptcy petition triggers the automatic stay.[18] The stay of an act against property of the estate continues until such property is no longer property of the estate.[19] Under Garcia's confirmed chapter 13 plan, property of the estate does not revest in Garcia until dismissal or discharge.[20] Here, the stay came into effect on March 11, 2013 when the Garcias filed this chapter 13 case and remains in effect at present.

---

[17] Whether Tyson had notice of Garcia's bankruptcy would be important if it was alleged that Tyson "willfully" violated the automatic stay, subjecting it to potential liability for damages under § 362(k)(1). *See In re Kline,* 472 B.R. 98, 103 (10th Cir. BAP 2012), *aff'd* 514 Fed. Appx. 810 (10th Cir. Apr. 18, 2013). That claim is not alleged here. Instead, the trustee alleges Tyson's lien is void because actions taken in violation of the automatic stay are void and of no force or effect, even when there is no knowledge of the bankruptcy and existence of the stay. *Id.*
[18] 11 U.S.C. § 362(a).
[19] 11 U.S.C. § 362(c)(1).
[20] Doc. 32, p. 3. Confirmation of a plan vests all of the property of the estate in the debtor, unless the plan or confirmation order provides otherwise. *See* 11 U.S.C. § 1327(b)

7

Kansas workers compensation law permits an injured worker to receive workers compensation benefits from her employer *and* pursue a recovery by court action against the third party tortfeasor who caused the injury.[21] KAN. STAT. ANN. § 44-504(b) grants an employer that pays workers compensation benefits to an injured employee a right to subrogation and a lien against any recovery the injured worker obtains from a third party tortfeasor up to the amount of benefits paid by the employer. This statute preserves injured workers' claims against third party tortfeasors and prevents double recovery by injured workers.[22] It permits an employer to recoup the workers compensation benefits it previously paid an injured employee from the employee's recovery from the third-party tortfeasor who caused the injury. Section 44-504(b) states, in relevant part:

> In the event of recovery from such other person [the tortfeasor] by the injured worker . . . by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action.[23]

---

[21] KAN. STAT. ANN. § 44-504(a) (2000).
[22] *See Edwards v. Anderson Engineering, Inc.,* 284 Kan. 892, 896-97, 166 P. 3d 1047 (2007).
[23] "Compensation and medical aid" as used in § 44-504(b) includes "all payments of medical compensation, disability compensation . . ., and any other payments made or provided pursuant to the workers compensation act." § 44-504(f).

8

On June 25, 2014, after she filed her bankruptcy case, Ms. Garcia sued Aramark and, sometime in 2016, settled her personal injury case for $45,000.[24] The net post-petition settlement proceeds of $25,359.37 remain in Ms. Young's attorney trust account. Section 1306(a) makes them part of the chapter 13 case bankruptcy estate.[25] As KAN. STAT. ANN. § 44-504(b) provides, Tyson's statutory subrogation right arose when Garcia settled her action against Aramark, resulting in a "recovery."[26] That right is secured by a lien. A "statutory lien" is defined by § 101(53) of the Bankruptcy Code as a "lien arising solely by force of a statute on specified circumstances or conditions . . . ."[27] In interpreting § 44-504(b), the Kansas state courts have held that the lien arises automatically by operation of law when the injured worker obtains a recovery "by judgment, settlement, or otherwise" from the third party tortfeasor.[28] Tyson's subrogation lien arose solely under the "specified circumstances or conditions" described in § 44-504(b).

---

[24] The motion for approval of the settlement by the bankruptcy court as required by Fed. R. Bankr. P. 9019 was filed November 29, 2016 and approved, after hearing, in January of 2017.
[25] *See* 11 U.S.C. § 1306(a).
[26] *Anderson v. National Carriers, Inc.,* 240 Kan. 101, 104-05, 727 P.2d 899 (1986) (employer's statutory subrogation right and lien does not arise "unless and until" there is a recovery).
[27] 11 U.S.C. § 101(53). A "lien" is defined as a "charge against an interest in property to secure payment of a debt or performance of an obligation." §101(37). *See also Anderson v. National Carriers, Inc., supra* at 105 (referring to current § 44-504(b) as statutory subrogation right); *Smith v. Russell*, 274 Kan. 1076, 1086, 58 P.3d 698 (2002) (discussing potential subrogation lienholder's statutory right to intervene under § 44-504(b))
[28] *Smith v. Russell, supra* (no statutory requirement that a potential subrogation lienholder file a notice of lien; creation of lien occurs automatically); *Ballard v.*

9

Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate."[29] The trustee contends that because the automatic stay was in place when Tyson's subrogation lien on the Aramark settlement arose, it therefore violated the stay and is void. The trustee relies on two opinions issued by this Court that dealt with an automobile insurer's right of subrogation and PIP (personal injury protection) lien, as authority. The PIP lien statute, found at KAN. STAT. ANN. § 40-3113a, is nearly identical to the workers compensation lien statute in play in this case. Section 40-3113a(a) provides that when an automobile insurer pays PIP benefits to an injured insured under the Kansas Automobile Injury Reparations Act,[30] the insured retains the right to pursue a personal injury lawsuit against the person who caused the injury.[31] Subsection (b) of that statute subrogates the insurer to and

---

*Dondlinger & Sons Const. Co.,* 51 Kan. App. 2d 855, 867-68, 355 P.3d 707 (2015) (lien amount is undisputed amount of compensation and medical expenses employer paid and no notice of lien is required; subrogation and creation of lien occurs automatically under § 44-504(b)); *Heimerman v. Rose,* 387 P.3d 194 (Table) (Kan. App. Ct., Jan. 13, 2017) (quoting *Ballard, supra* and stating under § 44-504 lien is created by operation of law).

[29] 11 U.S.C. § 362(a)(4).
[30] KAN. STAT. ANN. § 40-3101, *et seq*.
[31] In general, PIP benefits include medical, disability, rehabilitation, funeral, and survivor benefits. KAN. STAT. ANN. § 40-3103(q). Section 40-3113a(a) is very similar to §44-504(a) and states:

> (a) When the injury for which [PIP] benefits are payable under this act is caused under circumstances creating a legal liability against a tortfeasor pursuant to K.S.A. 40-3117 or the law of the appropriate jurisdiction, the injured person . . . shall have the right to pursue such person's remedy by proper action in a court of competent jurisdiction against such tortfeasor.

10

grants it a lien on the injured person's recovery "by judgment, settlement or otherwise" from the tortfeasor to the extent the insurer has paid the insured PIP benefits.[32]

In both cases, *In re Veazey*[33] and *In re White,*[34] the chapter 7 trustees of accident victims filed adversary proceedings to avoid the automobile insurers' PIP liens in post-petition tort recoveries to repay reparations payments the insurers had made pre- and post-petition. In both cases, the insureds had been involved in prepetition car accidents and pursued separate actions against the tortfeasors.[35] Arguing that the insurer's post-petition PIP lien was void because it violated the automatic stay, the trustees invoked § 362(a)(4), stating that the liens were created while the stay was in effect as part of an attempt to exercise control over estate property. The insurers argued that their lien interests arose pre-petition under

---

KAN. STAT. ANN. § 40-3113a(a) (2000).
[32] Similar to the workers compensation lien statute, KAN. STAT. ANN. § 40-3113a(b) (2000) states:

> (b) In the event of recovery from such tortfeasor by the injured person, . . . by judgment, settlement or otherwise, the insurer or self-insurer shall be subrogated to the extent of duplicative [PIP] benefits provided to date of such recovery and shall have a lien therefor against such recovery and the insurer or self-insurer may intervene in any action to protect and enforce such lien.

[33] *Nazar, Trustee v. Allstate Insurance Company, et al. (In re Veazey),* 272 B.R. 486 (Bankr. D. Kan. 2002).
[34] *In re White,* 297 B.R. 626 (Bankr. D. Kan. 2003).
[35] The insured's personal injury cause of action against the tortfeasor became property of the chapter 7 estate the moment debtor filed her bankruptcy petition. *See* 11 U.S.C. § 541(a).

11

Kansas law and could be perfected post-petition under § 362(b)(3).[36] I sided with the trustee in *Veazey*, stating that the insurer had no prepetition property interest in the debtor's cause of action because its interest only arises "'in the event of recovery' and not before."[37] By "asserting the [PIP] lien post-petition," the insurers acted to create, perfect, or enforce a lien against property of the estate in violation of § 362(a)(4). Lacking controlling Tenth Circuit authority, the Court relied on a Second Circuit Court of Appeals case that held § 362(a)(4) "applies to statutory liens, regardless of whether an 'act' is require[d] to create or perfect the lien."[38] While *In re White* arose in the context of a Rule 9019 motion, the governing rules remained the same.[39] The insurer's statutory PIP lien against the settlement proceeds did not arise before settlement and the insurer could not assert its post-petition PIP lien against the recovery without violating the stay.[40]

Earlier this year, and while these motions have been pending, the Tenth Circuit Court of Appeals decided *In re Cowen,* interpreting § 362(a)(3) and the phrase "any act" as used in that subsection.[41] In *Cowen* two creditors repossessed the debtor's

---

[36] Under § 362(b)(3) the filing of a bankruptcy petition does not stay "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) . . ."
[37] *Veazey* at 494-95.
[38] *Id.* at 493, citing *In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540, 1545 (2nd Cir. 1989) (a tax lien enforcement case).
[39] Fed. R. Bankr. P. 9019(a).
[40] 297 B.R. at 630, 636-37 (right of subrogation accrued only when there was a recovery from the tortfeasor, not upon the insurer's payment of PIP benefits).
[41] *WD Equipment, LLC. v. Cowen (In re Cowen),* 849 F.3d 943 (10th Cir. 2017).

12

commercial trucks pre-petition. Debtor filed a chapter 13 bankruptcy the next day and demanded return of the vehicles. When the creditors refused, debtor filed an adversary complaint alleging a willful violation of the automatic stay and seeking damages. The bankruptcy court found a willful violation of the stay by the creditors' refusal to turn over the trucks and awarded damages in excess of $200,000. Section 362(a)(3) makes it a violation of the stay to commit "any act . . . to exercise control over property of the estate." The Court of Appeals reversed, holding that the plain meaning of the word "act" in this subsection is to "take action" or "doing something."[42] "The act of passively holding onto an asset" does not constitute a stay violation in the absence of an affirmative act to exercise control over property of the estate.

This is the minority view. Only our Circuit and the District of Columbia Circuit Court of Appeals interpret "act" as requiring an affirmative act to exercise control over estate property.[43] Nevertheless, *Cowen* suggests that a right of subrogation and lien that arises automatically upon the injured worker's recovery under § 44-504(b) would not amount to an act of possession or an act to exercise control of property of the estate. If anything, Tyson was more passive than the creditors in *Cowen*. The "act" that gave rise to the lien was the Aramark settlement and it was accomplished

---

[42] *Cowen,* 849 F.3d at 949.
[43] *See United States v. Inslaw,* 932 F.2d 1467, 1474 (D.C. Cir. 1991) (stay provision applies only to acts taken after bankruptcy petition is filed; continuing use of intangible trade secret rights in enhancements to case-tracking software program after software developer filed bankruptcy did not constitute an act to exercise control over property of the estate).

13

by Garcia, not Tyson. Tyson has never possessed, held, or committed an act to exercise control over the Aramark settlement proceeds.

Section 362(a)(3), (4), (5), and (6) each contain the phrase "any act."[44] There is no reason to believe that the Tenth Circuit Court of Appeals would interpret the word "act" in § 362(a)(4) differently than it did in § 362(a)(3) in *Cowen*.[45] I am duty bound to follow *Cowen*.[46] While it does not specifically address the creation of a statutory subrogation lien, it provides controlling authority interpreting the words "any act" as used in § 362(a) that casts considerable doubt on my contrary conclusions in *Veazey* and *White*.

By applying *Cowen* in light of the summary judgment record here, I conclude that Tyson's subrogation lien arose by operation of law, and without Tyson committing any affirmative post-petition act that breached § 362(a)(4). Rather, its lien automatically arose under KAN. STAT. ANN. § 44-504(b) when Ms. Garcia

---

[44] Section 362(a)(3) stays "any act" to obtain possession of property of the estate or to exercise control over property of the estate. Section 362(a)(5) stays "any act" to create, perfect or enforce any lien against property of the debtor to the extent the lien secures a prepetition claim. Section 362(a)(6) stays "any act" to collect, assess, or recover a prepetition claim against debtor.

[45] Identical words used in different parts of the same statute are presumed to have the same meaning. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006); *First National Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 697 (10th Cir. 2014).

[46] *See also In re Waldrop,* 2017 WL 1183937 (Bankr. W.D. Okla. Mar. 29, 2017) (following *Cowen*, judgment creditor and its attorney did not violate the automatic stay after debtor's demand to contact garnishee bank and release funds garnished prepetition by instructing garnishee bank to retain possession of funds pending further order of the court).

14

recovered against Aramark by way of settlement. Tyson played no part in that lawsuit or in Garcia's obtaining a recovery. No action on Tyson's part was required to create or attach its subrogation lien. I therefore conclude that Tyson did not violate the automatic stay and has a valid statutory lien under § 44-504(b).

As noted previously, the trustee's complaint only sought a determination that Tyson's lien never attached or was void, having been "created, perfected and/or enforced" in violation of § 362(a)(4), and that no stay exception applies.[47] He did not plead in the alternative that the lien, if valid, may be avoided by the trustee's exercise of his avoiding powers under 11 U.S.C. §§ 545, 549 or other chapter 5 provisions.[48] Because no avoidance claim is properly before me, I express no opinion on the merits of such a claim.

Tyson's motion for summary judgment is GRANTED and the trustee's cross-motion for summary judgment is DENIED. A judgment on decision shall issue this day.

###

---

[47] *See* note 16, *supra*.
[48] While the trustee alleges in the jurisdictional allegations of the complaint that the adversary proceeding is brought under "11 U.S.C. §§ 544, 545, and/or 549," and titles its claim as one for "Determination of Lien Rights/Avoidance of Lien," none of the factual allegations are related in any fashion to lien avoiding powers under chapter 5 of the Bankruptcy Code. Indeed the exclusive legal basis asserted for the requested relief is § 362. *See* Adv. Doc. 1, ¶s 4, 16, 18-19.

15